EXHIBIT "A"

Main Agency Agreement For: Gama Corp.

## VIGO REMITTANCE CORP. AGENCY AGREEMENT

This Agency Agreement (this "Agreement") is entered into by Vigo Remittance Corp., a New York corporation ("Vigo") and Integrated Payment Systems Inc., a Delaware corporation ("IPS") (Vigo and IPS are collectively referred to herein as "Vigo) and the undersigned Agent.

Agent and Vigo agree as follows:
1       **Definitions.** Capitalized terms used herein shall have the meanings given to such terms as set forth in this Section 1 or as defined elsewhere in this Agreement or any Attachment hereto.
1.1     "Service Requirements" include the Bank Secrecy Act Compliance Manual, operations manuals, user guides, consumer forms, receipts, record retention schedules, and applicable policies, rules and regulations, all as may be amended from time to time by Vigo.
1.2     "Services" means the Money Transfer Services and/or the offering of Money Orders for sale to the public, as applicable.
1.3     "Trust Account" means a bank account maintained by Agent for the purpose of depositing MT Trust Funds (as defined in Part A) and/or MO Trust Funds (as defined in Part B), as applicable.
2       **Services.** Vigo appoints Agent as its agent authorized to offer the Services indicated on the signature page hereof in accordance with the terms and conditions of this Agreement and Agent shall comply with the terms, conditions and procedures set forth in the applicable Description of Service, attached as Parts A and/or B and with the Service Requirements. Current copies of the Service Requirements have been provided to Agent by Vigo and are available upon request from Vigo.

| Initialed By Agent:  | • Vigo Money Transfer® Services (Part A) - Method of access: Personal Computer |
|---|---|

3       **Locations.**
3.1     Designation of Locations. Agent shall offer the Services at each of Agent's locations on Attachment I and during the hours specified by Agent. Agent shall notify VIGO of any changes to the locations on Attachment I, and Agent shall obtain VIGO's prior approval before adding locations.
4       **Advertising; Trademarks.**
4.1     Advertising. Agent agrees to advertise and promote the Services so as to develop customer interest and confidence in the Services and with Vigo's Trademarks. Agent shall (a) participate in Vigo's promotional programs, (b) make prominent use of signs, brochures, displays, decals and other promotional materials provided by Vigo; and (c) meet Vigo's merchandising standards, as set forth in Part A and/or Part B, as applicable.
4.2     Approval. Agent may promote any of the Services in its own advertising or promotional materials in any form of media, including radio, television, print or the Internet, subject to the prior written approval of Vigo. Vigo may periodically inspect Agent's advertising and promotional materials relating to the Services for compliance with this Section 4.2. Agent shall, upon Vigo's request, promptly modify, remove, or replace any advertising or discontinue such promotion that Vigo finds misleading or that otherwise violates the terms of this Agreement.
4.3     Trademarks. Agent is granted a nonexclusive, royalty-free right to use the trade names, trademarks, trade dress, symbols, logos and copyrighted material (collectively "Trademarks") of Vigo specified by Vigo from time to time, and Vigo is granted the nonexclusive, royalty-free right to use Agent's Trademarks, each for the limited purpose of advertising and promoting the Services, and subject in each case to the prior written approval of the party whose Trademarks are being used. Each party agrees that use of any other party's Trademarks shall not confer any proprietary right thereto in any manner. Each party shall cease all use of the other party's Trademarks immediately upon termination or suspension of this Agreement.
4.4     Press Releases. No party may issue any press release or other public notice as to the subject matter of this Agreement without the prior written approval of the other party.
5       **Confidentiality.**
5.1     Agent acknowledges that all records and information regarding consumers that Agent may collect (including, but not limited to information provided by consumers on transaction receipts or fax receipts) ("Consumer Information") is the exclusive property of Vigo. Agent agrees that the records and Consumer Information shall be used only in the performance of the Services, that Agent may not use such information itself, that it shall not be sold, rented, exchanged or otherwise disclosed to any party other than Vigo for any purpose whatsoever without the prior written consent of Vigo, except as may be required by law. All such records and Consumer Information shall be provided to Vigo upon its request. If Vigo shall consent to any collection, use or transfer of Consumer Information, then Agent warrants to Vigo that such collection, use and transfer shall be accomplished in full compliance with all applicable laws and regulations governing data protection and consumer privacy, and with the Service Requirements. In the event that Agent is required to provide any Consumer Information outside of the ordinary course of reporting to law enforcement authorities or any other entity, Agent will immediately notify Vigo and, if requested by Vigo, will fully cooperate with any effort to obtain a protective order or any other protective measures.
5.2     Agent agrees that neither Agent nor its officers, principals or employees shall sell, rent, exchange or otherwise disclose to any party other than Vigo, other than for purposes of its performance under this Agreement or as may be required by law: (a) Service Requirements; (b) security identifications, account numbers and Vigo's other security measures and procedures; (c) volumes,

Main Agency Agreement For: Gama Corp.

revenues, earnings, commission rates or payments hereunder; or (d) other confidential information with respect to Vigo, the Services, the MT Equipment, the MO Machines, this Agreement, or the relationship between the parties.

5.3 Agent shall cooperate fully with Vigo in implementing any procedures mandated by law in order to protect consumer privacy and/or consumer data, or any such commercially reasonable procedures implemented by Vigo.

## 6 Compliance with Laws.

6.1 Compliance with Laws. Agent shall comply (and shall cause its officers, principals and employees to comply) with all federal, state and local laws and regulations applicable to Agent's business and to Agent's provision of the Services, as the same may be amended from time to time, including but not limited to: (a) state licensing laws; (b) the Bank Secrecy Act (31 U.S.C. § 5311 et. seq., and its implementing regulations, 31 C.F.R. Part 103); (c) the IRS's cash reporting requirements (26 U.S.C. 6050I) and related regulations; (d) state currency reporting requirements; (e) Federal or state anti-money laundering laws and all rules and regulations promulgated thereunder (e.g., 18 U.S.C. §§ 1956 and 1957); (f) all applicable state money transfer or sale of checks laws and regulations (including those laws and regulations referred to or set out in Schedule A, if any); (g) all applicable federal and state privacy laws and regulations; (h) the USA PATRIOT Act; and (i) all applicable federal and state laws regulating access for the disabled, including but not limited to the Americans with Disabilities Act.

6.2 Nondiscrimination. Agent hereby certifies that Agent will not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin or age.

## 7 Representations and Warranties.

7.1 Key Employees. Agent represents and warrants on its own behalf and on behalf of its officers, principals and key employees that (a) all information disclosed to Vigo in connection with the application process to become a Vigo Agent (the "Agency Agreement Application") is true, accurate, and complete; (b) none of them has been convicted of any felony, except as may have been disclosed to Vigo in writing prior to the Effective Date; (c) none of them has ever been charged with or convicted of (or pleaded guilty or no contest to) any criminal act constituting, involving or relating to: fraud; embezzlement; theft; money laundering; receipt of stolen property; or the possession, use, manufacture or distribution of any narcotic or other controlled substance. This representation and warranty shall be deemed an ongoing representation and warranty from Agent. Agent shall provide notice to Vigo within forty-eight hours after any of the foregoing representations or warranties shall cease to be true at any time during the term of this Agreement. Provision of such notice shall not eliminate the need for strict compliance with the first two (2) sentences of this Section 7.1.

7.2 Subagents. Agent represents and warrants that it shall not appoint any subagents hereunder and shall not offer the Services at or through any entity not a party to this Agreement or at or through any location not expressly included as a location under this Agreement.

7.3 Ownership. Agent represents and warrants that it has disclosed to Vigo all ownership or other interests that Agent, its affiliates, and their respective officers, directors, and principals, as applicable, may have in any other Vigo agent or agency.

7.4 Authority. Agent represents and warrants that: (a) Agent has full power and authority to enter into this Agreement; (b) the execution, delivery and performance by Agent of this Agreement will not constitute a default (or an event which, with notice or lapse of time or both, would cause a default) under any contract or agreement to which Agent or any of its affiliates are a party, or require consent or approval from any other party to any such contract; and (c) this Agreement constitutes a legal, valid and binding obligation of Agent, enforceable against Agent in accordance with the terms and conditions hereof.

7.5 No Warranty. VIGO MAKES NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO ANY EQUIPMENT, SOFTWARE AND OTHER ITEMS PROVIDED UNDER THIS AGREEMENT, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIMS THE IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY AND ANY IMPLIED WARRANTY OF NON-INFRINGEMENT. ANY EQUIPMENT, SOFTWARE AND OTHER ITEMS PROVIDED UNDER THIS AGREEMENT BY VIGO IS PROVIDED TO AGENT "AS IS" WITH ALL FAULTS.

## 8. Term and Termination.

8.1 Term. This Agreement shall be effective on the Effective Date and continue in force for a period of five (5) years (the "Initial Term"), unless sooner terminated as provided in this Agreement. Upon the expiration of the Initial Term, this Agreement shall automatically renew for an additional term of five (5) years (the "First Renewal Term"), unless either party shall have given the other party at least twelve (12), but not more than twenty-four (24), months prior written notice of termination. Upon expiration of the Initial Term and the First Renewal Term, this Agreement shall continue in effect for successive renewal terms of one (1) year ("Successive Renewal Terms"), subject to the right of either party to terminate this Agreement at any time thereafter by giving the other party at least three (3) months prior written notice of termination. In this Agreement, "Term" means the Initial Term and, if applicable, the First Renewal Term and any Successive Renewal Term of this Agreement.

8.2 Suspension and Termination. Notwithstanding any other provision of this Agreement to the contrary, at any time during the term of this Agreement, Vigo may, as applicable: (a) demand immediate wire transfer of the MT Trust Funds, MO Trust Funds and/or other charges due and owing Vigo, (and Agent shall immediately comply with such demand); (b) immediately upon notice terminate this Agreement for its convenience; (c) exercise any legal and/or equitable remedies available to Vigo, for which Vigo shall be entitled to reimbursement of reasonable attorneys' fees and expenses; (e) satisfy the amount owed by offset against any funds that may be due or owing to Agent by Vigo or an affiliate of Vigo; (f) assess a late charge on the amount of the payment due for each day Agent fails to make such payment equal to the greater of $25.00 per day or interest accruing until paid on the amount of such payment at the rate of two percentage points (2%) above the prime rate of interest published in the Wall Street Journal, or any other financial publication designated by Vigo in effect at that time, or such lesser amount as may be allowed under applicable law, or (f) immediately upon notice terminate this Agreement or suspend Agent's ability to provide the Services at any or all location(s) subject to this Agreement if: (i) Vigo determines, in its sole discretion, that a material adverse change has occurred in the financial condition or business prospects of Agent, a principal of Agent or any guarantor of this Agreement or that such a change may occur in the next 12 months; (ii) Agent is dissolved, becomes insolvent, has a receiver or custodian appointed for it or any of its assets, makes an assignment for the benefit of its creditors, or becomes a debtor or debtor-in-possession in any bankruptcy, reorganization or similar proceeding; (iii) Vigo believes in good faith that the prospect of continued performance by Agent is impaired (for purposes of the preceding, "good faith" means honesty in fact and Agent shall have the burden of proof in establishing lack of good faith); (iv) Agent defaults under any other material contract, obligation or debt of Agent; (v) Agent materially breaches any of the terms, conditions, representations or warranties set forth in this Agreement or any other agreement between Vigo, or an affiliate of Vigo, and Agent or a principal of Agent (including but not limited to a failure by Agent to pay Vigo in accordance with Section 4A of Part A or Section 4B of Part B, as applicable); (vi) Vigo has reason to believe that Agent may be violating any Federal, state or local laws applicable to Agent's business and/or the offering of the Services,

Main Agency Agreement For: Gama Corp.

including but not limited to those set forth in Section 6 hereof; (vii) Agent fails to respond to, or cooperate with, in a timely manner reasonable instructions or inquiries from Vigo; (viii) any representation or information provided to Vigo by Agent is or was false or misleading in any material respect at the time of such disclosure; or (ix) there is a Change of Control of Agent.

8.3     Notwithstanding any other provision of this Agreement to the contrary, Vigo may immediately terminate this Agreement or any location covered by this Agreement in the event that Vigo determines, in its sole discretion, that compliance with this Agreement would cause Vigo or any of its affiliates to violate or potentially violate any local, state or federal law or regulation or any court order.

**9    Indemnification; Limitation of Liability; Security for Performance.**

9.1     Indemnification. Agent shall indemnify and hold Vigo, its affiliates, and their respective officers, directors, agents and employees, harmless from and against any claims, losses, damages, liabilities or expenses (including reasonable attorneys' fees and expenses) arising out of or resulting from: (a) any breach or violation of this Agreement; (b) any failure to comply with applicable law; (c) any failure to adhere to the Service Requirements (including any payments of Money Transfers to other than the intended recipients, in excess of the authorized amount, or resulting from any failure to mark the transaction as paid-out in OV records); (d) any act of Agent, its officers, directors, agents or employees, as applicable; or (e) any claim of premises liability involving any of Agent's locations.

9.2     Limitation of Liability. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, THE CUMULATIVE AGGREGATE LIABILITY OF VIGO UNDER THIS AGREEMENT SHALL BE LIMITED TO A MAXIMUM AGGREGATE OF $100,000.00 IN DIRECT DAMAGES SUFFERED. IN NO EVENT SHALL VIGO, OR ITS AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY FOR LOST PROFITS, PUNITIVE, EXEMPLARY, SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SIMILAR DAMAGES, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES REGARDLESS OF WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**10    Financial Statements; Audit and Inspection.**

10.1     Financial Statements. Upon request by Vigo from time to time, Agent shall promptly provide to Vigo its current annual or interim financial statements and/or personal financial statement, certified by Agent's independent auditors, if available. Agent grants to Vigo, as well as to prior employers, trade references, Dun and Bradstreet, and banks, consumer credit services, consumer reporting agencies and to state and federal government representatives without regard to whether they are listed herein, permission and authorization to verify, receive, exchange and obtain business and/or personal credit and other information, including without limitation, criminal background checks, as part of Vigo's ongoing evaluation of Agent. Upon Vigo's request, Agent shall secure, for the benefit of Vigo, a bond, irrevocable letter of credit or other similar instrument acceptable to Vigo.

10.2     Records. Agent shall maintain records with respect to the Services for at least five (5) years or for such additional period as may be required by law or Vigo. Such records shall include copies of all transaction forms, receipts and all other records Agent may compile in connection with its performance of the Services. Agent shall provide copies of any such records to Vigo upon Vigo's request.

10.3     Audit. During the term of this Agreement, and for a period of one year thereafter, Vigo shall have the right at any time to audit and inspect Agent's performance and Agent's books and records related to Agent's performance of the Services and Agent's compliance with federal, state and/or local laws and regulations and the Service Requirements. Consumer Information is the property of Vigo and is subject to audit, review or collection by Vigo. Upon notice from Vigo of any deficiency, Agent shall correct such deficiency within five business days. Agent shall pay Vigo the reasonable costs related to such audit.

**11    Insurance.** Agent represents and warrants that Agent has sufficient assets or insurance to cover losses or liabilities arising from claims for workers' compensation, bodily injury, property damage, theft, employee dishonesty, forgery, robbery, burglary, misplacement and similar occurrences, including loss, theft, damage, destruction or the like of the MT Equipment and/or the MO Machines, as applicable. Agent's obligation to maintain insurance hereunder shall not relieve Agent of any of its other obligations hereunder, including its indemnity obligations in Section 9.1.

**12    Assignment.**

12.1     Any transfer or assignment of this Agreement or any rights hereunder by Agent, in whole or in part, by operation of law or otherwise, without Vigo's prior written consent, is prohibited, and at Vigo's sole discretion shall be voidable. Under no circumstances shall any assignment or transfer of this Agreement by Agent release Agent from its obligations hereunder unless Vigo shall consent to such a release in writing.

12.4     Vigo may assign or transfer this Agreement and its rights hereunder and may delegate its duties hereunder, in whole or in part, to any third party, whether in connection with a change in ownership or otherwise, without the consent of Agent.

12.5     Except as provided in the following sentence, this Agreement will inure to the benefit of Vigo, its successors and assigns. No assignee for the benefit of creditors, custodian, receiver, trustee in bankruptcy, debtor in possession, sheriff, constable or any other officer of the court, or other person charged with taking custody of Agent's assets or business, shall have any right to continue or to assume or to assign this Agreement.

**13    Notices.** All notices hereunder shall be in writing and shall be deemed given when personally delivered, or when sent by facsimile transmission with receipt confirmed, one day after being sent by a reputable overnight courier, or three business days after being mailed by certified mail, return receipt requested, in each case directed: (a) if to Agent, to its address as shown on the face of its Application, to the attention of the representative or party signing this Agreement; (b) if to Vigo, 1300 Sawgrass Corporate Parkway, Suite 110, Sunrise, Florida 33351, Attention: President, with a copy to the same address, Attention: Legal Department; or (c) to such other address for each party as is specified by such party in a notice given to the other party.

**14    Other Provisions.**

14.1     Several Liability of Each Vigo Company. Agent acknowledges and agrees that each Vigo Company is not responsible for any liability or obligation of the other Vigo Company set forth herein. Agent's sole recourse and remedy shall be against the applicable Vigo company. Vigo's failure to perform its obligations set forth herein shall not excuse Agent from performing its obligations set forth herein.

14.2     Waiver of Trial by Jury. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING A CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT.

14.3     Waiver of Service of Process. AGENT HEREBY IRREVOCABLY WAIVES PERSONAL SERVICE OF PROCESS AND CONSENTS THAT SERVICE OF PROCESS UPON IT MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, AT THE ADDRESS PROVIDED IN SECTION 13.

14.4     Independent Contractors. The parties agree that they are acting hereunder as independent contractors and that nothing in

Main Agency Agreement For: Gama Corp.

this Agreement shall be construed to constitute either party as a partner, employee or agent of the other, and no employee or agent of either party shall be deemed to be the employee or agent of the other (except for the limited purpose of offering the Services as defined herein). Neither party shall have the authority to make any agreement or commitment, nor incur any liability on behalf of the other, nor be liable for any acts or omissions of the other, except as specifically provided herein.

14.5     This Agreement, including the Agency Agreement Application attached14.6     hereto and all Parts, Schedules, Exhibits and Attachments hereto, constitutes the entire and sole agreement between the parties with respect to the subject matter herein. This Agreement supersedes all prior understandings, arrangements or agreements whether verbal or written, between the parties hereto with respect to the subject matter hereof not contained in this Agreement. Provisions of this Agreement which are to be performed after termination to effectuate their intent and purpose, including without limitation, indemnification, confidentiality, limitations or liability and other obligations, shall survive the expiration or termination of this Agreement. Except as provided in this Agreement, no modification, renewal, extension or waiver of any of the provisions of this Agreement shall be binding upon the parties unless made in writing and signed by the parties. Email exchanges and communications shall not constitute, nor be will be construed as, a written modification to this Agreement and will not be binding upon the parties. No failure of either party to require performance by the other of any provision hereof shall be construed to be a modification of this Agreement or a waiver of any succeeding breach. If any provision of this Agreement shall be determined to be invalid under any applicable law, such provision shall be deemed void and the remainder of this Agreement shall continue in full force and effect. Except as expressly set forth herein, nothing contained in this Agreement is intended to confer upon any person not a party hereto any rights, benefits or remedies of any kind or character whatsoever, and no such person shall be deemed a third-party beneficiary under this Agreement. In the event this Agreement references more than one person, corporation, partnership or entity as Agent, then it is expressly agreed that the liability of such persons or entities as Agent hereunder shall be both joint and several. If Agent believes any adjustments should be made with respect to the settlement for any amounts due to or due from VIGO, then Agent shall notify VIGO in writing within 60 calendar days after the disputed amount should have been paid. In such case, VIGO will investigate the disputed amount and effect any required adjustments. If Agent notifies VIGO after such time period, VIGO may, in its discretion, assist Agent, at Agent's expense, in investigating whether any adjustments are appropriate and whether any amounts are due to or from other parties, but VIGO shall not have any obligation to investigate or effect any such adjustments. Any voluntary efforts by VIGO to assist Agent in investigating such matters will not create any obligation to continue such investigation or assist with any investigation in response to any future notices of possible adjustments that are not timely submitted.This Agreement shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of New York (without regard to any provisions concerning choice of law or conflict of laws which might result in the application of the law of another jurisdiction).

15.     State Specific Requirements. This Section 15 applies to Agent with respect to its locations, if any, in the states listed below:
CALIFORNIA, HAWAII, IDAHO, INDIANA, MAINE, MARYLAND, MINNESOTA, NEW YORK, NORTH CAROLINA, NORTH DAKOTA, OREGON, TENNESSEE, TEXAS, WYOMING

Agent and Vigo are subject to supervision, regulation and disciplinary action, including but not limited to termination of the Agreement, by or at the direction of the Director (as defined below). Agent hereby consents to the Director's inspection of the books and records of Agent, with or without prior written notice to Vigo or Agent. As used in this Section 15, "Director" means the following for each of the states listed below:

California – Commissioner of Financial Institutions
Idaho – Director of the Idaho Department of Finance
Hawaii – Hawaii Commissioner of Financial Institutions
Indiana – Director of Indiana Department of Financial Institutions
Maine – Director of Office of Consumer Credit Regulation within the Department of Professional and Financial Regulation
Maryland – Bank Commissioner of the Department of Licensing and Regulation
Minnesota – Commissioner of Commerce
New York – Superintendent of the New York State Banking Department
North Carolina – Commissioner of Banks of the State of North Carolina
North Dakota – Commissioner of the Department of Financial Institutions
Oregon – Director of the Department of Consumer and Business Services
Tennessee – Tennessee Commissioner of Financial Institutions
Texas – Texas Commissioner of Banking
Wyoming – State Banking Commissioner

**ALASKA, ARKANSAS, CALIFORNIA, DISTRICT OF COLUMBIA, ILLINOIS, IOWA, MARYLAND, NEW JERSEY, VERMONT, WASHINGTON, TEXAS**

Agent will perform all Services in compliance with the Act (as defined below) and any rules, regulations or orders issued thereunder, as amended from time to time. As used in this Schedule A, "the Act" means the following for each of the states listed below:

Alaska – Alaska Uniform Money Services Act, Chapter 55 of Title 6 of the Alaska Statutes
Arkansas – Arkansas Uniform Money Services Act, Arkansas Code, Title 23, Chapter 55
California – Division 16 of the California Payment Instruments Law, and Chapter 14 of the California Financial Code related to the Transmission of Money Abroad
District of Columbia – Money Transmissions Law, Chapter 12 of Title 26 of the District of Columbia Code
Illinois – the laws of the State of Illinois and the United States, including without limitation, Illinois Transmitters of Money Act, 205 Illinois Compiled Statutes Section 657
Iowa – Iowa Uniform Money Services Act, Chapter 533C of the Iowa Code
Maryland – Maryland Money Transmission Act, Md. Code Ann., Fin. Inst. Sections 12-401 to 12-431

Main Agency Agreement For: Gama Corp.

<u>New Jersey</u> – New Jersey Money Transmitters Act, New Jersey Statutes, Title 17, Chapter 15C.
<u>Vermont</u> – Chapter 79, Title 8 of the Vermont Statutes
<u>Washington</u> – Washington Uniform Money Services Act, Revised Code of Washington, Title 19, Chapter 19.230
<u>Texas</u> – All applicable state and federal laws pertaining to money transmission, including Chapter 151 of the Texas Finance Code, relevant provisions of the Bank Secrecy Act and USA PATRIOT Act, and regulations of the State of Texas, including, but not limited to, the posting of the following notice to consumers as required under Title 7, Section 33.51(d)(1) of the Texas Administrative Code:

"Complaints concerning money transmission activities should be directed to:
Vigo Remittance Corp.
1301 International Parkway, 4th Floor
Sunrise, Florida 33323
For Customer Service, please call: 800-777-8784

If, after contacting OV, you still have an unresolved complaint regarding the company's money transmission activity, then please direct your complaint to:

Texas Department of Banking
2601 North Lamar Boulevard
Austin, Texas 78705
1-877-276-5554 (toll free)
www.banking.state.tx.us"

### ALASKA
VIGO appoints Agent as its authorized delegate with authority to engage in money transmission on behalf of VIGO. Agent acknowledges that the Department of Commerce, Community, and Economic Development (the "Department") may conduct an annual examination of VIGO or Agent upon 45 days' notice to VIGO. Agent also acknowledges that the Department may examine OV or Agent, at any time, with or without prior written notice to VIGO or Agent, if the Department has reason to believe that VIGO or Agent is engaging in an unsafe or unsound practice or has violated or is violating Chapter 55 of the Alaska Statutes or a regulation adopted or an order issued under Chapter 55 of the Alaska Statutes.

### ARKANSAS
VIGO appoints Agent as its agent with authority to engage in the business of Money Transmission on behalf of VIGO. Neither VIGO nor Agent may authorize subdelegates. VIGO and Agent are subject to supervision, regulation, examination and disciplinary action by the Arkansas Securities Commissioner (the "Commissioner") and Agent is under a duty to act only as authorized under this Agreement with VIGO, and if Agent exceeds its authority hereunder, this Agreement may be cancelled.

### CALIFORNIA
Agent shall make and keep accounts, correspondence, memoranda, papers, books and other records which the California Commissioner of Financial Institutions by regulation or order requires, and Agent shall preserve such records for the time specified by such regulation or order. This Agreement is conditioned on Agent receiving approval from the State of California to operate as a money transfer agent in that state and shall not take effect unless and until such approval is received. In the event such approval is denied, this Agreement shall be null and void. In the event such approval is subsequently revoked, Vigo shall have the right to terminate this Agreement upon five days' written notice, any other provision of this Agreement notwithstanding.

### HAWAII
Vigo appoints Agent as its delegate with authority to engage in money transmission on behalf of Vigo. Neither Vigo nor Agent may authorize subdelegates without the written consent of the Hawaii Commissioner of Financial Institutions (the "Commissioner"). Agent hereby certifies that it is in compliance, and shall comply, with the recordkeeping and reporting requirements under Title 31 United States Code Section 5311 et seq., 31 Code of Federal Regulations Part 103, Section 125, and other federal and state laws pertaining to money laundering.

### ILLINOIS
This Agreement is conditioned on Agent receiving approval from the State of Illinois to operate as a Money Transfer Agent in that State and shall not take effect unless and until such approval is received. In the event such approval is denied or not received, this Agreement shall be null and void. If such approval is revoked, Vigo may immediately terminate this Agreement upon written notice, any other provision of this Agreement notwithstanding.

### KENTUCKY
Pursuant to the laws of the State of Kentucky, Vigo hereby provides Agent with the following information: (a) Vigo has designated Agent as its agent with authority to engage in money transmission on behalf of Vigo as authorized under Kentucky Revised Statutes Chapter 366A; (b) Vigo may not authorize subagents; (c) Vigo is subject to regulation by the Executive Director of the Kentucky Office of Financial Institutions (the "Executive Director"); and (d) Vigo is required to comply with applicable federal and state law. Any other provision hereof notwithstanding, Agent agrees to the following terms as required by the laws of the State of Kentucky: (i) that Agent has been designated by Vigo as its agent with authority to engage in money transmission on behalf of Vigo as authorized under Kentucky Revised Statutes Chapter 366A; (ii) that Agent shall operate in full compliance with Kentucky Revised Statutes Chapter 366A, the rules promulgated thereunder, and any order issued by the Executive Director pursuant to Kentucky Revised Statutes Chapter 366A; (iii) that Agent may not authorize subagents; (iv) that Agent shall timely remit all money legally due to Vigo in accordance with the terms of the Agency Agreement between Vigo and Agent; (v) that Agent is subject to regulation by the Executive Director; and (vi) that Agent shall comply with applicable federal and state law.

Main Agency Agreement For: Gama Corp.

**NEW YORK**

Agent is prohibited from acting on behalf of the consumer as a courier for the transmission of money, and no Money Order sold may be retained by Agent. All Money Orders sold must be given by the Agent to the purchasers of the instruments for their own delivery to the beneficiary. Agent shall not sell any Money Order or money transmission instruments in New York State pursuant to this Agreement unless the name "Vigo Remittance Corp." and/or "Integrated Payment Systems Inc." clearly appears on the face of the instrument.

**NORTH CAROLINA**

Vigo shall issue a certificate of authority for each location at which it conducts licensed activities in North Carolina through authorized delegates such as Agent. The certificate shall be posted in public view at each location of Agent in North Carolina and shall state as follows: "Money transmission on behalf of Vigo is conducted at this location pursuant to the Money Transmitters Act."

**TEXAS**

Agent hereby certifies that it is familiar with and agrees to fully comply with all applicable state and federal laws, rules, and regulations pertaining to money transmission, including Chapter 151 of the Texas Finance Code and rules adopted thereunder, relevant provisions of the Bank Secrecy Act and the USA PATRIOT Act, and Chapter 271 of the Texas Finance Code. Agent agrees to prepare and maintain all records as required by Chapter 151 of the Texas Finance Code or any rule adopted thereunder or as reasonably requested by the Texas Commissioner of Banking. Agent acknowledges that Vigo, as a license holder under Chapter 151 of the Texas Finance Code, is subject to regulation by the Texas Commissioner of Banking and that, as part of that regulation, the Commissioner may suspend or revoke an authorized delegate designation or require Vigo to terminate an authorized delegate designation. Agent acknowledges receipt of the Vigo written policies and procedures applicable to Agent's compliance with applicable state and federal laws. Agent acknowledges that it has been provided the website address through which Agent can access Chapter 151 of the Texas Finance Code and rules adopted pursuant to said chapter (www.banking.state.tx.us) and the Bank Secrecy Act and the USA PATRIOT Act (www.msb.gov and www.fincen.gov), and Chapter 271 of the Texas Finance Code (www.banking.state.tx.us).

The undersigned have executed the foregoing Agreement to be effective as of the date Vigo signs this Agreement (the "Effective Date"). BY SIGNING THIS AGREEMENT, AGENT AGREES TO THE PROVISIONS HEREIN AND ALL ATTACHMENTS HERETO FOR THE SERVICE TO BE PROVIDED BY AGENT.

Agent:   Gama Corp.

By:

Signed 10/14/08 12:34:30

Name:   Volcan Manuel D
Title:   President


OV / VIGO
Credit Officer:   Ana Cristina Botero

By:

Signed 10/15/08 14:38:15
(Authorized Representative)

Name:   Ana Cristina Botero
**Title:**   Credit Officer


Rev. 7/2008

MT Part A  For: Gama Corp.

# PART A
## Description of Services
## MONEY TRANSFER

For purposes of this Part A, Vigo refers to Vigo Remittance Corp.

**1A. Services.**

1A.1 During the term of this Agreement, Agent shall offer Money Transfer Services. As used herein, "Money Transfer Services" means the receipt of funds by Agent for transmission and disbursement for a fee and shall include all of Vigo's domestic and international money transfer services, and such other funds transfer or funds disbursement services that Vigo may introduce, discontinue or replace any of the foregoing with from time to time. As used herein, "Money Transfer" means a person to person money transfer initiated through the Vigo system as determined and as may be changed or terminated by VIGO from time to time.

1A.2 Agent agrees that, during the term of this Agreement, Agent shall not act as agent for, represent, offer or allow to be offered at any location of Agent any other money transfer service or other service similar to any of the Money Transfer Services, including, without limitation, card or ATM based money transfer services. Agent shall not allow any other person or entity that leases or uses space at any of Agent's locations to offer any other money transfer service, other service similar to any of the Money Transfer Services, or participate or act as agent or representative in connection with any money transfer service offered in whole or in part by telephone, automated financial service machine or over the internet. Agent represents and warrants that Agent is not obligated to offer any money transfer services at any location of Agent that compete with the Money Transfer Services.

1A.3 Agent agrees that, if Agent breaches Section 1A.2 Vigo's remedies at law will not be adequate, and in addition to the other remedies set forth herein, Vigo shall be entitled to specific performance, including appropriate injunctive relief.

**2A. Procedures.**

2A.1  Vigo shall train Agent and Agent's designated employees in providing the Money Transfer Services as Vigo deems necessary. Vigo shall furnish Agent with all forms necessary for providing the Money Transfer Services, and Agent shall not use any other forms in providing the Money Transfer Services.

2A.2  For each Money Transfer sent from an Agent location, Agent shall collect the principal amount of the Money Transfer, the applicable Consumer Send Fee (as defined below). Agent shall not impose any other fee or charge of any kind upon the Money Transfer sender. Agent's acceptance of any form of payment for Money Transfers shall be at Agent's sole and exclusive risk and Agent shall be liable to Vigo for the principal amount of the Money Transfer, the applicable Consumer Send Fee, regardless of whether Agent ultimately receives payment therefore or the funds are counterfeit, lost or stolen. As used herein, the "Consumer Send Fee" means the fee, as set by Vigo, which is charged to a consumer for sending a Money Transfer at the time of initiating such transaction. The Consumer Send Fee does not include any difference between the currency exchange rate given to consumers (set by Vigo) and that received by Vigo.

2A.3  In the event the parties indicate on Attachment I that Agent will provide pay-outs for domestic Money Transfers, Agent shall pay in cash no less than the minimum cash payout amount specified in Attachment I for that location (or the face amount if less). Agent shall not impose any fees or charges of any kind upon a Money Transfer recipient.

2A.4  Agent shall not use the Money Transfer Services to send or receive a Money Transfer on behalf of Agent, or of any principal, officer, director or employee of Agent, or of any member of Agent's family, as applicable.

2A.5  Agent agrees that Vigo may establish, from time to time and in Vigo's sole discretion, both daily and single transaction limits relating to the number and principal amount of transactions that may be transacted at each of Agent's locations. Vigo reserves the right to temporarily suspend the Money Transfer Services at any location if Agent exceeds a daily Money Transfer limit established by Vigo.

2A.6  Without the prior written approval of Vigo, Agent shall not advertise, solicit, or negotiate any Vigo services in any language other than English or Spanish.

**3A. Trust Relationship; Liability for Loss.**

3A.1  As of the Effective Date, Vigo appoints Agent as its agent and trustee for the limited purposes of offering the Money Transfer Services for sale to the public and collecting MT Trust Funds and imprinting VIGO money transfer checks ("MT Checks"), all in accordance with the provisions of this Agreement. Agent shall act in a fiduciary capacity and hold the MT Checks and MT Trust Funds in trust for the benefit of Vigo and shall maintain and account for the MT Trust Funds separate and apart from all other funds and monies of Agent. Agent agrees that, in the event Agent commingles MT Trust Funds with any other funds, such funds shall be impressed with a trust to the extent of the MT Trust Funds. Agent shall not acquire by operation of this Agreement, or otherwise, any right, title or interest of any kind in the MT Trust Funds or MT Checks. All MT Trust Funds and MT Checks remain the sole and exclusive property of Vigo. Agent's financial records shall identify the MT Trust Funds and MT Checks as funds and other property held in trust for the benefit of Vigo.

3A.2  Anything to the contrary notwithstanding, Agent shall safeguard and protect all MT Trust Funds, MT Checks and MT Equipment in its capacity as a fiduciary or trustee entrusted with such cash, similar instruments or equipment for safekeeping. Agent shall be absolutely liable for any loss, theft, seizure, forfeiture or misappropriation of the same until such MT Trust Funds, MT Checks or MT Equipment are received by or are in the possession of Vigo. Agent shall be absolutely liable to Vigo for: (a) all MT Trust Funds; (b) the principal amount of all MT Checks lost, stolen, destroyed, materially damaged, misappropriated, seized or forfeited from Agent and which are subsequently paid by Vigo; and (c) the replacement value of all MT Equipment lost, stolen, destroyed, damaged, misappropriated, seized or forfeited while in Agent's possession. Within 24 hours after unused MT Checks or MT Equipment provided hereunder have been lost, stolen, destroyed, damaged, misappropriated, seized or forfeited, Agent shall notify Vigo of the serial numbers of such MT Checks or MT Equipment. However, such notice does not relieve Agent of its liability as provided herein. Agent agrees to pay all MT Trust Funds to Vigo upon demand, regardless of the presence or absence of negligence of Agent, Vigo or any other person or entity.

**4A. Remittance of MT Trust Funds.**  On each "Banking Business Day" (defined as a day on which federal banks are open for business), Agent shall remit all monies (including, without limitation, Money Transfer principal and fees) received by Agent in connection with the provision of the Money Transfer Services (the "MT Trust Funds") to Vigo as follows:

MT Part A  For: Gama Corp.

(VIGO-OWNED; WIRE or CASH DEPOSIT) Agent will deposit all monies (including, without limitation, Money Transfer principal and fees) received by Agent in connection with the provision of the Money Transfer Services (the "MT Trust Funds") into the Trust Account no later than 10:00 a.m., local time at the place of deposit, on the business day following receipt thereof. Vigo will then initiate a draft (via Automated Clearing House or other electronic means) against the Trust Account for the total amount of all funds due Vigo hereunder. Under no circumstances shall Agent deposit checks or other negotiable instruments into the account designated by Vigo.

If Agent fails to comply with this Section 4A, Vigo may take any or all of the steps set forth in Section 8.2 of the Agreement. Vigo may change the provisions of this section (a) upon notice to Agent if Agent fails to remit amounts due to Vigo in accordance with this Section, or if Agent breaches any other material provision of the Agreement, or (b) by giving 10 days prior notice to Agent, provided that before the conclusion of this 10-day period, Agent may elect to terminate this Agreement by giving 30 days prior notice to Vigo, and the changes shall not take effect.

Vigo will then initiate a draft (via Automated Clearing House or other electronic means) against the Trust Account for the total amount of all funds due Vigo hereunder. If Agent fails to comply with this Section 4A, Vigo may take any or all of the steps set forth in Section 8.2 of the Agreement. Agent authorizes Vigo to initiate debit and credit entries to or from the Trust Account (as designated in "Schedule C") in accordance with this Agreement and the applicable rules of the National Automated Clearing House Association and its related member associations. Agent further authorizes the bank at which the Trust Account is maintained (the "Bank") to provide to Vigo all Trust Account activity and balance records and information as may be requested by Vigo. The Trust Account shall be maintained at a Federally insured financial institution designated by Agent and shall meet the requirements specified by Vigo from time to time. Agent shall, and shall direct its bank to, provide to Vigo all Trust Account activity and balance records and information as may be from time to time requested by Vigo. Agent shall provide Vigo with 14 days' advance notice prior to changing the Trust Account in any manner. Vigo shall not be liable for any act or omission of any automated clearing house, depository, or other person, including the originating depository financial institutions. ANY THIRD PARTY CHARGES, INCLUDING UNATHORIZED CHARGES AND ACCOUNT-RELATED MAINTENANCE CHARGES DEBITED TO THE TRUST ACCOUNT, REGARDLESS OF THE REASON FOR THE DEBIT, WILL BE THE RESPONSIBILITY OF THE AGENT AND WILL NOT BE REIMBURSED BY VIGO REMITTANCE CORP.

**5A. Payments to Agent**

5A. _Commissions_. In consideration of and subject to the Agent's performance of its obligations hereunder, Vigo agrees that, from the Consumer Send Fee, Agent shall be entitled to retain the commission as in effect from time to time for each Money Transfer transaction (each, a "Transaction Commission"). The applicable Transaction Commission for each transaction shall be as set forth on the transaction screen of the Vigo system and Agent hereby agrees to the electronic delivery of notice by Vigo of the applicable Transaction Commission as existing from time to time, including any changes thereto, which shall be determined by Vigo in its sole discretion. Agent hereby agrees that each time Agent submits/posts a transaction as shown on the transaction screen, Agent shall be agreeing and accepting the applicable Transaction Commission as full and final payment due Agent in connection with each such transaction and all Services provided by Agent in regard thereto, and to remit the balance of the funds received from the Consumer in accordance with this Section 5A. Agent may not charge a Consumer Send Fee other than that prescribed by Vigo. For the avoidance of doubt, the Transaction Commission shall be calculated solely based on the Consumer Send Fee, without regard to the amount of the Money Transfer principal. For transactions paid in a different currency than that received by Vigo or its Agent, Vigo and not Agent shall establish the rates by which the currency in which any transaction is originated shall be converted into the currency in which such transaction is paid. Agent shall not share in any gains or losses that result from the conversion of currencies. Except for the Transaction Commissions as described above, Vigo shall be entitled to the balance of all compensation and other revenues received for or in connection with the Money Transfer Services.

**6A. Money Transfer Equipment.**

6A.1 Vigo agrees to furnish to Agent, in bailment, all equipment necessary for Agent to provide the Money Transfer Services (the "MT Equipment"). This Agreement creates a bailment solely for temporary possession and use of the MT Equipment, and no other right, title or interest in or to the MT Equipment shall hereby pass to Agent. In the event Agent does not send a minimum of thirty (30) transactions per month, Vigo reserves the right to remove the MT Equipment from Agent's location, at Agent's expense. Agent shall be given three (3) months following the Effective Date to reach thirty (30) transactions per month before Vigo removes the MT Equipment. In the event Vigo removes the MT Equipment, Agent shall be permitted to process transactions through all other methods that Vigo makes available to Agent. Agent shall have and shall assume the exclusive care, custody and control of the MT Equipment. Agent shall not permit any abuse, deterioration, wreckage, dilapidation or waste of any MT Equipment and shall maintain insurance to cover the MT Equipment in accordance with Section 11(d) of the Agreement. Agent shall use the MT Equipment only in connection with the provision of the Money Transfer Services. At Agent's expense, Agent shall provide, in an area reasonably convenient for providing the Money Transfer Services, an analog telephone line, and Vigo shall make arrangements for transmission facilities to reach Vigo's computer system.

6A.2  Agent shall be responsible to Vigo for all state and local sales, use, property, business or similar taxes and/or assessments relating to the MT Equipment.

6A.3  Title to all MT Equipment computer programs, computer software, microcode, firmware and all updates, replacements and copies thereof provided by Vigo to Agent ("MT Software") shall remain in Vigo, and no title therein is transferred to Agent hereby. During the term of this Agreement, Agent is hereby granted a royalty-free, non-transferable and non-exclusive license to use the MT Software solely for the purpose of providing the Money Transfer Services and for such other purposes as Vigo or its affiliates may specify in writing from time to time. Such license shall terminate upon termination of this Agreement. In order to protect Vigo's trade secrets in the MT Software, except to the extent permitted by applicable law, Agent agrees not to reverse engineer, decompile, copy, modify, create derivative works of, transfer, sell, publish or disclose the MT Software. Agent agrees that the MT Software is proprietary and confidential information of Vigo.

**7A. Merchandising Standards.** Subject to the restrictions imposed by local ordinances, Agent must display merchanding materials provided by Vigo, which may include decals, hanging signs, clocks, Open/Close sign, banners, exterior back-lit sign, Metal Tacker sign, neon indoor facing out window sign or illuminated indoor facing-out window sign. At all times, Agent must

MT Part A  For: Gama Corp.

display all disclosure statements as required by law.

**8A. Termination Responsibilities; Liquidated Damages.**

8A.1  Immediately upon expiration or termination of this Agreement, or upon the closure of a location, with respect to that location, Agent shall: (a) stop presenting itself to the public as providing the Services; (b) make no use of Vigo's Trademarks, Consumer Information or confidential Information and return the same to Vigo; (c) refer all calls and customers regarding the Services to the telephone numbers and locations specified by Vigo and shall not divert any such calls or customers to a competitor of Vigo or disparage either Vigo or the Services; (d) at Agent's sole cost and expense, return to Vigo all of the following: all unused MT Checks, state licensing materials (if any), Consumer Information, information and materials of any type relating to Vigo's security measures and procedures, the MT Equipment, which shall be delivered in good repair and condition, reasonable wear and tear excepted (all equipment shall be shipped or mailed to Vigo freight or postage prepaid and fully insured for the full replacement value thereof), and any other items that Vigo has provided to Agent; (e) at Agent's sole cost and expense, remove and (at Vigo's election) deliver to Vigo or dispose of all signs, displays and other materials containing Vigo's name or logo (or will permit Vigo to do so at Agent's sole cost and expense); (f) render a full accounting to Vigo for all MT Checks furnished to Agent, all Services transacted through Agent and all MT Trust Funds; and (g) pay to Vigo all MT Trust Funds and any other amounts that may be due Vigo in accordance with the terms of this Agreement. In addition, Vigo will provide to Agent a 12" by 18" notice displaying Vigo's telephone numbers and the names, addresses and telephone numbers of locations where the Money Transfer Services are available. Agent shall post such notice in a conspicuous location for a period of 90 days following the termination of this Agreement. Upon any termination hereof, Vigo may instruct the local telephone company to remove Agent's locations from Vigo's listings in any telephone directory records and may notify its respective customers of the termination and direct them to other service locations.

8A.2  If this Agreement is terminated prior to the end of the Initial Term, Agent shall, in addition to all of Agent's obligations set forth in Section 8A.1, reimburse Vigo for the costs of installing the signs provided to Agent by Vigo, multiplied by a fraction, the numerator of which is the number of months remaining in the Initial Term, and the denominator of which is number of months in the Initial Term.

8A.3  If this Agreement is improperly terminated by Agent prior to the expiration of the Initial Term, or the expiration of the Renewal Term, or it is terminated prior to the expiration of the Initial Term, or the expiration of the Renewal Term, due to a breach hereof by Agent, then, in addition to any other remedies contained herein or otherwise available to Vigo, Agent shall pay Vigo, as liquidated damages, upon demand, an amount equal to: the average monthly consumer fees collected by Agent for the Money Transfer Services provided by Vigo during the 90 days preceding the effective date of such termination, less the actual commissions and bonuses paid to Agent by Vigo during such 90 day period, multiplied by the number of months (including any pro rata portion of a month) then-remaining in the Initial Term or the Renewal Term. Agent acknowledges and agrees that the amount calculated in the manner specified above is a reasonable estimate of Vigo's probable damages in the event of such termination and does not constitute a penalty

Rev. 9/2007

MT - Attachment II Location : 1 Gama Corp. For: Gama Corp.

Money Transfer
## ATTACHMENT I
## AGENT LOCATION, HOURS OF OPERATION
(Must be completed for each location.)

**Agent Relationship**
Store Name: Gama Corp.
Contact Name: Manuel Volcan
Address: 148 - 07A Hillside Ave.
Jamaica, NY 11435
Business Name: Gama Corp.
Telephone Number: (718) 725-4762

Will Agent pay-out Money Transfer received by consumers at this location? If yes, Agent agrees to payout in cash:

\* Hours of Operation:

| Day | Hours | Holiday | Hours |
|---|---|---|---|
| Monday: | 08:00 AM to 10:00 PM | Christmas: | 08:00 AM to 10:00 PM |
| Tuesday: | 08:00 AM to 10:00 PM | New Years: | 08:00 AM to 10:00 PM |
| Wednesday: | 08:00 AM to 10:00 PM | Easter: | 08:00 AM to 10:00 PM |
| Thursday: | 08:00 AM to 10:00 PM | Thanksgiving: | 08:00 AM to 08:00 AM |
| Friday: | 08:00 AM to 10:00 PM | | |
| Saturday: | 08:00 AM to 10:00 PM | | |
| Sunday: | 09:00 AM to 09:00 PM | | |

\* If circumstances interfere with Agent's hours of operation at any location, Agent shall inform VI via telephone of the nature and expected durations of such interference and the temporary hours of operation at least five days in advance, circumstances permitting, or in any event as soon as reasonably practicable.

Rev. 9/2007

# EXHIBIT "B"

Personal Indemnity For: Gama Corp.

# VIGO REMITTANCE CORP.
## PERSONAL INDEMNITY AND GUARANTY

In order to induce Vigo Remittance Corp. and/or Integrated Payment Systems Inc. (each referred to herein as "Vigo") to enter into this Agreement (the "Agreement") by and between Vigo and Agent and in consideration thereof and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned personally, individually, jointly and severally guarantees to Vigo the prompt payment in full by Agent (as defined in the Agreement) of all sums and amounts payable under the Agreement and the prompt and complete performance by Agent of all other obligations thereunder.

Each of the undersigned agrees, without Vigo's first having to proceed against Agent, to pay on demand all sums due and to become due to Vigo under the Agreement and all damages, losses, costs, attorney's fees and expenses which Vigo may suffer by reason of Agent's or any of the undersigned's failures to pay or perform any obligation under the Agreement. This guaranty is an absolute, unconditional and continuing guaranty of payment and complete performance by Agent of all obligations under the Agreement and all substitutions, renewals, or replacements thereof.

Vigo may at any time and from time to time, without the undersigned's consent, and without affecting or impairing the obligation of any of the undersigned hereunder, take any action with respect to, or waive or amend any of the obligations of the Agent, including without limitation, any of the following: (i) renew or extend any obligations of Agent or of co-guarantors (whether hereunder or under a separate instrument) or of any other party at any time directly or contingently liable for the payment of said obligations without limit as to the number or extent of said obligations; (ii) accept partial payment of said obligations; (iii) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of said obligations and the security or collateral therefor, if any, in any manner; or (iv) consent to the transfer of, or release from time to time, security or collateral, if any. No payment by a guarantor hereunder shall entitle the undersigned, by subrogation or otherwise, to any payment by Agent or out of the property of Agent except after the full payment and performance by Agent of all indebtedness, obligations and liabilities to Vigo.

No termination hereof shall be effected by the death of any or all of the undersigned. Each of the undersigned hereby waives notice of acceptance hereof and presentment, demand, protest and notice of nonpayment and any other demands and notices whatsoever. This guaranty shall bind the undersigned's respective heirs, administrators, personal representatives, successors and assigns, and shall inure to Vigo's successors and assigns. All of Vigo's rights are cumulative and not alternative. All capitalized terms used but not otherwise defined in this Personal Indemnity and Guaranty shall have the meanings given to such terms in the Agreement.

Permission and authorization is hereby granted to Vigo, as well as to prior employers, trade references, Dun and Bradstreet, banks, consumer credit services, consumer reporting agencies and to state and federal government representatives without regard to whether they are listed herein, permission and authorization to verify, receive, exchange and obtain business and/or personal credit, personal financial statements, and other information including without limitation criminal background checks as part of the application and approval process for Agent to become approved by Vigo to provide the Services, or at any time thereafter in connection with Vigo's ongoing evaluation of Agent or the undersigned and/or the collection of any obligation arising from the Agreement or the business relationship evidenced thereby, including this Personal Indemnity and Guaranty.

THE UNDERSIGNED HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING ANY CLAIM RELATING TO THIS PERSONAL INDEMNITY AND GUARANTY; THE UNDERSIGNED ALSO HEREBY IRREVOCABLY WAIVE PERSONAL SERVICE OF PROCESS AND CONSENT THAT SERVICE OF PROCESS MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED.

IN WITNESS WHEREOF, the undersigned have executed the foregoing Personal Indemnity and Guaranty.

Guarantor:

Signature:

Signed 10/14/08 12:35:12

Name: Volcan Manuel D
Social Security #: 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
33 - 38 Parsons Blv. 4H
Flushing New York 11354

Drivers License #: 765214035    State: New York

Personal Indemnity  For: Gama Corp.

Rev. 9/2007

# EXHIBIT "C"



## GAMA CORP 190407

### Agent's Statement Without Fees

| Due Date | Number | Class | Status | Original | Balance Due |
|---|---|---|---|---|---|
| 20-Aug-09 | 1082790 | Invoice | Closed | (726.00) | 38,085.82 |
| 4-Aug-09 | 26AV1133908-2189492 | Payment | Closed | (6,200.00) | 38,811.82 |
| 30-Jul-09 | 26AV1133908-2185241 | Payment | Closed | (5,800.00) | 45,011.82 |
| 28-Jul-09 | 26AV1133908-2181865 | Payment | Closed | (7,700.00) | 50,811.82 |
| 28-Jul-09 | 26AV1133908-2181861 | Payment | Closed | (7,720.00) | 58,511.82 |
| 28-Jul-09 | 26AV1133908-2181859 | Payment | Closed | (7,735.00) | 66,231.82 |
| 27-Jul-09 | 1035698 | Invoice | Closed | (449.19) | 73,966.82 |
| 27-Jul-09 | 26AV1133908-2180146 | Payment | Closed | (6,219.00) | 74,416.01 |
| 27-Jul-09 | 26AV1133908-2180153 | Payment | Closed | (5,107.00) | 80,635.01 |
| 24-Jul-09 | 1032666 | Invoice | Closed | (692.00) | 85,742.01 |
| 24-Jul-09 | 26AV1133908-2179240 | Payment | Closed | (6,222.00) | 86,434.01 |
| 24-Jul-09 | 26AV1133908-2179241 | Payment | Closed | (6,214.00) | 92,656.01 |
| 24-Jul-09 | 26AV1133908-2179245 | Payment | Closed | (5,090.00) | 98,870.01 |
| 23-Jul-09 | 1029988 | Invoice | Closed | 12,098.11 | 103,960.01 |
| 22-Jul-09 | 1027842 | Invoice | Closed | 16,490.82 | 91,861.90 |
| 21-Jul-09 | 1025202 | Invoice | Closed | 24,598.98 | 75,371.08 |
| 20-Jul-09 | 1022637 | Invoice | Closed | 52,007.09 | 50,772.10 |
| Initial Balance | | | | (1,234.99) | (1,234.99) |

# EXHIBIT "D"

## Notice Recipients

District/Off: 0207−1                User: ggriffith                Date Created: 3/17/2011
Case: 1−11−42029−jbr                Form ID: 213                  Total: 30

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | |
|---|---|---|---|---|
| db | Manuel Volcan | 143−09 85 Drive | 2nd Floor | Briarwood, NY 11435 |
| tr | David J Doyaga | 26 Court Street | Suite 1002 | Brooklyn, NY 11242 |
| aty | Manuel D Gomez | 225 Broadway | Suite 1010 | New York, NY 10007 |
| smg | NYS Department of Taxation &Finance | Bankruptcy Unit | PO Box 5300 | Albany, NY 12205 |
| smg | NYC Department of Finance | 345 Adams Street, 3rd Floor | Attn: Legal Affairs − Devora Cohn | Brooklyn, NY 11201 |
| smg | NYS Unemployment Insurance | Attn: Insolvency Unit | Bldg. #12, Room 256 | Albany, NY 12240 |
| smg | United States Trustee | Office of the United States Trustee | 271 Cadman Plaza East | Brooklyn, NY 11201 |
| 7110079 | Associated Recovery Systems | PO Box 469046 | Escondido, CA 92046 | |
| 7110080 | Bank Of America | PO Box 15019 | Wilmington, DE 19886 | |
| 7110081 | Bank Of America | PO Box 15026 | Wilmington, DE 19850 | |
| 7110083 | Beneficial National Bank | PO BOX 88000 | Baltimore, MD 21288−0001 | |
| 7110084 | CBUSA/Sears | 701 E 60th St North | PO Box 6241 | Sioux Falls, SD 57117 |
| 7110085 | Capital One Bank | PO Box 30281 | Salt Lake City, UT 84130 | |
| 7110086 | Creditors Financial Group, LLC | PO Box 440290 | Aurora CO 80044 | |
| 7110087 | Diversified ADJ SVC | 600 Coon Rapids BL | Coon Rapids, MN 55433 | |
| 7110088 | Gene R. Kazlow, ESQ | Kazlow &Kazlow | 237 West 35th Street, 14th Floor | New York, NY 10001 |
| 7110089 | HSBC Best Buy | PO Box 5253 | Carol Stream, IL 60197 | |
| 7110090 | HSBC Payment Processing | PO BOX 5233 | Carol Stream, IL 60197−5233 | |
| 7110091 | Henrichs Law Firm, P.C | 3250 Wilshire Blvd., Suite 2000 | Los Angeles, CA 90010 | |
| 7110092 | IC Systems Collections | PO Box 64378 | Saint Paul, MN 55164 | |
| 7110093 | LVNV Funding LLC | PO Box 10584 | Greenville, SC 29603 | |
| 7110094 | Leading Edge Recovery Solutions, LLC | 5440 N Cumberland Ave. Ste 300 | Chicago IL 60656−1490 | |
| 7110095 | Maidenbaum &Associates P.L.L.C | One Broadcast Plaza | Suite 218 | Merrick, N.Y. 11566 |
| 7110096 | Midland Credit MGMT INC. | 8875 Aero DR Ste. 2 | San Diego, CA 92123 | |
| 7110097 | Pentagroup Financial,LLC | PO Box 742209 | Houston TX 77274 | |
| 7110098 | Sears/Citibank | PO Box 183081 | Columbus, OH 43218−3081 | |
| 7110099 | TD Bank Credit Cards | P.O. Box 84037 | Columbus, GA 31908−4037 | |
| 7110100 | United Collections Bureau | PO Box 1116 | Maumee OH 43537 | |
| 7110101 | Verizon Wireless | PO Box 1850 | Folsom, CA 95630 | |
| 7110102 | Wm. W. Siegel &Assoc., Attys. at Law, LLC | 7 Penn Plaza, Suite 1500 | New York, NY 10001 | |

TOTAL: 30

# EXHIBIT "E"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
IN RE:
    MANUEL VOLCAN aka
    MANUEL D. VOLCAN,               CHAPTER 7
                                                Case No. 1-11-42029-jbr
          Debtor.
-------------------------------------------------------X

## CERTIFICATION IN SUPPORT OF MOTION TO REOPEN

David J. Finkler, Esq., an attorney at law duly admitted to practice law before the Courts of the State of New York and the United States District Court for the Eastern District of New York certifies, under penalty of perjury, as follows:

1. I am counsel to Western Union Financial Services, Inc., the movant herein, and am familiar with the matter before this Court.
2. I annex hereto as Exhibit "E" a copy of the proposed Adversary Complaint for filing with the Court upon approval.

I certify that the foregoing statements by me are true to the best of my knowledge and understand that if any statements by me are deemed willfully false, I may be subject to punishment.

Dated:    January 4, 2011

                                                                  David J. Finkler (df9320)